2013-1341. We'll hear from Mr. Rutherford. May it please the Court. The District Court below erred when it construed controllable image generator as a recording device because the context of Claim 2 of the 992 patent clearly tells us that the output of the controllable image generator is video images, something that can be viewed on a screen, not frames of video data. In other words, something that would be recorded and stored. And so because we can, the output of the controllable image generator is video images, that indicates that it's a playback device. It is a device that accesses data. But the claim says generating video data. Your Honor, that's in the preamble. You're right, Your Honor. It talks about the idea of generating. But the whole idea of data at the level of the District Court, that can be flexible. That can be something that can record. That can be something that can display. It can generate images for display or it can generate frames of video data for storage. And so the whole idea of generating, you're generating an image whether you put it onto a screen, you're generating recorded data if you put it down on... I look at Figures 1 and 2 and the description thereof in Column 3. It decides that Figure 1 is a system for generating video, whereas 2 is a system for displaying. In other words, they're distinguished. The claim that we're talking about is generating. Your Honor, so the generating terminology appears in the preamble of the claim. The preamble of the claim is very short and it gives life. I agree that the descriptions of Figures 1 and Figure 2, Figures 1 use the term generating, Figure 2 uses the term display. The patent also uses the terminology assembling. And the recitation of cameras is all over the specs. Yes, Your Honor. There's no dispute. There are two different embodiments disclosed in the 992. There's certainly a camera. There are different types of cameras. Some are controllable, some are freestanding. But it's Claim 2 we're talking about. Yes, Your Honor. But there's also disclosure in the specification of playback devices. And so it turns out that Claim 2 is directed to playback devices based on the structure of the claim, the context of the claim. And so, again, the court blows... You say that and you make attorney argument on that, but that doesn't have much meaning for me. I mean, you've got to distinguish. You think that Figure 1 doesn't have any relationship to Claim 2? Many of the terminology is used in common, Your Honor. Yes. So, in other words, there are computers that are utilized in both situations, right? A computer is utilized in Figure 1 to help define how to control, for instance, the robotic camera at the direction of a user. But there's a computer that's also used in Figure 2. So there's controllers, there's... Well, as Judge Lurie pointed out, the language in Claim 2 starts, an apparatus for generating contact addressable video comprising. And in Claim 3, when they describe Figure 1, that's precisely the language they use. And you would have us say, we don't care, we can ignore all that. It has absolutely zero relevance because this is a preamble. This is a language appearing at the preamble. Is that your response? No, Your Honor. I'm not saying it's only... The preamble here is not dictating that. My point is, it's in the context of the claim. When I assume you're saying Claim 3, we're talking about the Claim 3 of the 514, which is the parent... Actually, I may have misspoke. I meant Claim 2. I was talking about the 992. Okay. But if you want to address the other issue, which the District Court raised... So the issue that I have is, we go down in the controllable image generator, so we need to look at that element to determine what that phrase means. And that element tells us that it's responsive to control signals, which produce video images. And so if we go into the specification itself, the specification of the 992 in columns 4, lines 17 through 29, talk to us. And they tell us, they say, look, the content, the players store video frames. You're talking about where they describe what Figure 2 is? Yes, ma'am. Yes, ma'am. And it talks about that the video switcher is controlled by the computer and it selects this output video from the video disk. But is it your position, then, that any time there's a video playback, that that's the same as generating? No, Your Honor. Generating is all context, right? So you can generate with a video playback. You can generate recorded video using a camera. The word generating isn't unique or isn't mutually exclusive to either of those embodiments. That terminology can be used whether you're recording or whether you're playing back. But the 902, you'd agree the 902 is just all about displaying playback, correct? Well, yes, the 902. And it specifically, in fact, you referenced the 902. It tells us, if we look at how the 902 talks to us about playback, it specifically aligns with the claim language of the claim 2. But 902 doesn't say anything about generating. 902, it talks about, though, displaying video image. But no generating. Your Honor, I don't know whether it specifically uses the word, but not in the context I don't think of the playback. That is correct. It talks about displaying video images. And in column 2, I mean, sorry, column 4, at lines, I guess it's 34 through 36, you're specifically defining that you're telling us that figure 2 is essentially the same as what's in the 902. And we also talk about the 902 should, you can use it to understand the background of the 992 better when it comes to the playback device, the interactive playback device. And there, specifically in the 902, this was cited in our appendix 2868, one of our marketing presentations. The 902 tells us a computer includes ports that supply video control signals to the video disc players, what we're calling the controllable image generators. In response to the control signals, the video disc players supply addressed frames of video, the stored video, and a video routing switch that selects the frame. There's two of them, you have to pick one. And they supply that to a large display video projector or other means for displaying the video image. So the input to the disc players is frames of video data. The output is a video image. Again, the specific language in claim 2 of the controllable image generator is, in response to control signals, i.e. the control signals down to the video disc players, it outputs a video image, just like it says in the 902. You know, the 992 is all about the generating of the images, right? Your Honor, not necessarily. It has two embodiments. It talks about figure 1, it talks about generating, it talks about a number of different ways to generate or assemble content addressable video. But it also has an embodiment of figure 2, which is the playback. And that is what's claimed in claim 2. And again, it aligns with what is told. Again, when we look at, so when the court below basically relied on the fact that controllable image generator and controllable video image generator in claim 3 of the 514 were the same ancestry and equivalently could be considered to be the same works. Nobody disagreed with that. But because claim 3 was agreed, claim 3 of the 514 was agreed to be a recording device, the court said therefore that must mean the controllable image generator in the claim 2 is also a recording device. That's incorrect. Because the recording, we've all agreed that claim 3, this controllable video image generator, the claim language is specifically the controllable video image generator responses to the control signals, which produces frames of video data. That's exactly what a camera does. It takes, you know, it's filming an image, and then it produces frames of video data. The exact opposite is what's described of the controllable image generator in the 992 claim 2. It says the controllable image generator responses to the control signals, which produces video images. Again, video images are what we've been told in the quote I just gave you from the 902. That's what gets displayed. So you're saying that if we're looking at claim 2, you're saying that the first paragraph of claim 2 and the second paragraph of claim 2 are essentially the same thing? I mean, I'm sorry, the first and third paragraphs are essentially the same element? The first and third paragraphs. The first one says, it first says a content image display, which displays a content video image, right? And that's what the 902 was all about, the display, right? It was about the interaction between the display and the stored video. You know, that created a system where you could interact with the video in a particular way. In the 992 claim 2, no, the content image display is the screen, the TV, whatever you're producing that on. The controllable image generator, if you look at figures 2, that would be the equivalent of basically the display. That's where there's a disc in there that has the frames of video data stored on it, and then there's control signals that come down to those disc players that say, I want you to access frame whatever, right? So that gets accessed, the data gets accessed, and the controllable image generator produces a video image for display. That's what we're told in figure 2, and that's what we're told in claim 2. So you're saying figures 1 and 3 are totally different than what's in claim 2? They are. It's not directed at that embodiment. There's a lot of overlapping concepts on it. I don't think you had told us before, maybe I misunderstood, that claim 2 covered both figures, both figure claim 1 and figure 2. What, in the original, down at the district court level, in the original Am I right or wrong? Are you saying now that figure 2, claim 2 only deals with figure 2 and not figure 1? Are you saying it covers both of them? Your Honor, we never said in its entirety, at least to my knowledge, we never said in its entirety that claim 2 covered both figure 1 and figure 2. What we did say was controllable image generator. That term is generic enough. At the district court level, we said it's generic enough. Well, forget what you said at the district court. What are you telling us today? Claim 2 covers figure 1 and figure 2. No, ma'am, only figure 2. It only covers figure 2. Yes, ma'am. Figure 1 is not covered at all under claim 2. Not with claim 2. And same with figure 3. That is correct. Figure 3 relates to the flow of what happens in figure 1. Yes, Your Honor. There's no further questions at this point. I'll reserve my time. We will give you all of your time. Thank you, Your Honor. Thank you, Mr. Rutherford. Ms. Proots. Thank you, Your Honor. Good morning, Your Honor. May it please the Court. The claim language, the specification, and the prosecution history of the 992 patent all make very clear that a controllable image generator in claim 2 of the 992 is a controllable video recording device, as the district court held, and it is not a video playback device, as Patent Harbor claims. What do you think the point of figure 2 is in the patent? I believe that figure 2 is an illustration of the prior art. Both the 514 patent and the 992 patent are directed, foremost, to generation of content-addressable video, and the 514 is also directed to assembly of the content-addressable video. After the video is generated, after the content is assembled, it has to be played on a playback device, like a video player, and I believe the patent actually says that figure 2 is based on the 902 patent, which is in the prior art. It's just an illustration of a playback device. Neither the parent patent or the 992 patent is directed to an invention that is a display device. The invention of the 992 patent is pretty clearly a controllable video recording device that records and generates video. And the displaying function, that's one of the limitations of claim 2, but not the entirety of the description of what's claimed in claim 2, or it's just not even there at all? It's really not there. I mean, it starts out, claim 2 is about a controllable camera, and as illustrated in figure 1, which ties up to it and says, this is a figure that shows the generation of content-addressable video, you start out with a content image display that's in the camera view. You then go to the second element of claim 2, which is a controller that emits control signals, and those control signals position the robot-mounted camera within this limited frame to focus on a part of the object, a whole object. So the display that's mentioned in claim 2 is just what we do when we look through a viewfinder in a camera. We see what there is that we want to take a picture of or create a video image of. There are signals and ways we can position and focus the camera, and then the camera is what's responsible for recording the video. The invention of this patent is this automatic generation using a robot-controlled camera. If you go back to the parent application, which I think really Mr. Rutherford didn't exactly describe what claim 3 does, we have a side-by-side comparison in our brief. You're talking about the 514 now? I'm talking about the 514 parent application. There's no dispute that claim 3 of the 514 patent is a controllable camera, a video recording device. In fact, the dependent claim, claim 4 that comes after it, incorporates claim 3 and says the controllable image generator of claim 3 is a robot-controlled camera. So nobody disputes that the parent application, the same claim, is a controllable video recording device. When you look at claim 3, you see that the first two elements of claim 2 and claim 3 are identical. They start out with the content image display that displays the image that you're going to take a picture of, to create an image of. It goes to a controller that's in communication with the image display and emits these control signals where you can position the camera in the object to be photographed. Then you get to claim 3 where they're almost identical. I think that Mr. Rutherford focuses on the wrong part of the third element because the third elements are really the same. They're both for a controllable image generator or a controllable video image generator, which the parties agree are the same term, that video doesn't change that at all. Responsive to control signals, and in claim 2, which produce video images in response to video image data indicated by the control signals that are corresponding to respective positions in the content video image. In claim 3 of the parent application, responsive to control signals which produce frames of video data, each frame determining a video image. Also having the content indicated by the control signals corresponding to the respective position in the content video image. I think between the prosecution history and the specification of this patent and the claim language itself, there really is no doubt that this is a claim about generating, producing content addressable video. The term control signals, for example, appears five times in the specification of the patent. Every time it appears, it's in connection with a controllable camera. Sometimes a robot mounted camera, sometimes it just talks about using it to film. The control signals are never referenced with respect to a computer. The word control is only used, the only other context it's used in is to talk about a video switcher with relation to the computer. There is no reasonable argument that the computer is generating video the way a camera records video or that a computer is a recording device. In the district court, Patent Harbor also switched its position and started to say that the video players, and I think this is in their brief here, that the video players are somehow recording video. Well, they can't record video either. They play back video and there's no tie-up. There's nothing in the patent specification that ties up the computer or the video disc players to the controllable camera, which is really the essence of the controllable image generator. Figure 1 and Figure 3 are the inventions that is claimed in Claim 2. Figure 1 specifically says, it's expressly directed to an apparatus for generating content-addressable video. As the court noted, it's the preamble explaining what Claim 2 is about. And the specification expressly states about Figure 1 that it's a system for generating content-addressable video, including a controllable camera, a video recording device, to create content-addressable video. And at the appendix at page 150, you can see the illustration of Figure 1, which shows a robot-mounted camera that's being controlled by a camera position control that's focusing on an object, and that's where the production of video image data comes in. The data is where is the camera, what part of the object is it focused on. It's just information about the video image. But the picture is being taken of the video image. The prosecution history, as we were talking about, also supports this. In the parent application, which led to the 514 patent, Patent Harbor admits that Claim 3 is a controllable camera. It's a video recording device. It's the same language as Claim 2 of the 992. In fact, during prosecution of the 992, the examiner rejected Claim 2 of the 992 for obviousness-type double patenting, because it is the same as Claim 3 in that respect, and in fact submitted to a terminal disclaimer to have the patent expire concurrently with Claim 3. Is this patent still alive? Yes. I thought it expired. Let me take a look. We can ask Mr. Rutherford, I assume. I thought it was 2011 that it went off. No, it is not. Sorry about that. So it expired in 2011. Yes, it did. I believe it has. So we're talking about damages. Yes, we are. And talking about Figure 2, that is expressly directed to a prior art system. It says in the patent it's directed to a prior art system for displaying content, just like the one shown in the 902 patent, which has all of the same components. Those were all known in the prior art. We have taken the position that if Patent Harbor insists that Figure 2 is the invention of the patent, that the patent would be invalid for anticipation just based on the language in this patent itself. That is part of the prior art. But I think if you look at the patent itself, at prosecution history, this is a patent that says right in the abstract that it is for generating content addressable video. There's nowhere in this patent that it says the invention of this patent is displaying video. It's generating video and assembling the video that's generated. And the assembly claims don't appear in the 992 patent. There are only two claims in the 992 patent. Claim 1 is the method claim. Claim 2 is the apparatus claim. The term controllable image generator only appears in Claim 2. But both of these claims have the preamble they are directed to generating content addressable video. And in the terms of this patent, whenever the term generating is used, it's used in terms of a camera, in the context of a camera. It's never used in the context of any kind of playback. Do you see a difference between assembling content addressable video and generating content addressable video? The patent makes a distinction. And part of the invention, which isn't part of the 992 patent, is after the video is generated, it's tagged, it's assembled in a way that it can be accessed. And that's another part of the invention that the parties that are on this part of the case on the 992 patent were not involved with. There was the other patent, the 514 patent, was involved in the case. That involved some other parties. The parties that are before this court now are device makers. They aren't involved in that. They have players. And so it was a different part of the case. But yes, the patent, the specification of the patent definitely includes this assembly feature. What it doesn't include is any invention directed to playback. In fact, the field of the invention, as it says at the very start in column one at line 26, the invention relates to systems for generating and storing video frames of information such as produced using video film cameras. That's what the invention of this patent is about. And I believe that Patton Harbors' attempt to interpret Claim 2 as a playback device, there's nothing expressed in the patent that supports that position at all. They haven't cited anything that supports that position. It strains beyond all recognition what's stated in the specification. If you go to column two of the specification, after talking about, well, in column two at line 14, as Judge O'Malley was pointing out, this talks about the assembly aspect in the specification starting at line 14, column two. But if you go to line 29, it says, according to another aspect, and this is the second aspect of the invention, the present invention comprises an apparatus or method for generating content-addressable video. And it goes on to state at line 36, a controllable camera, such as a robot-mounted camera, then generates the frames of video in response to the position control signals derived from the content video image. We believe that it's very, very clear what Claim 2 is addressing. We believe that the district court was correct in construing the term controllable image generator as a controllable video recording device because that is consistent across the patent family with the 514 patent, it's consistent with the specification, and it's consistent with the claim language. There is nothing that Patent Harbor has advanced in terms of trying to apply Figure 2 instead of Figure 1 to this claim that has any support and that can, that really speaks to the term controllable image generator. It's basically, we advanced in the district court that it was a controllable camera. The court thought it should be a little broader than that. It's a recording device, so I guess, you know, there may be a way of recording video that doesn't exactly use the robot-mounted camera that's shown in the embodiment, but basically we're talking about generating video. And the claims, Claims 2 and 3, Claims 2 of the 992 and Claim 3 of the 514, both say they produce video. That's not what a playback device does. And I believe Judge O'Malley referenced Figure 3 in the patent, and Figure 3 is the flow of generating the content addressable video. And, looking for Figure 3. In the flowchart of Figure 3, it specifically talks about, Figure 3 is that A152 of the specification, and if you look at the flowchart, the third, the third box down says, control camera position in response to keys and generate video frames. It's the camera that generates the video frames, that generates the video image. It's certainly, certainly 1 and 3 are tied up to Claim 2. That's the invention of Claim 2. I have very little time left. Does the court have any questions for me? Thank you, Ms. Bruch. Thank you very much. Mr. Rutherford has a few minutes to go, if he needs it. A little more than four minutes. Before you get started, can I just ask you a quick question, following up on Judge Lurie's question about the status of the patent. At the time you filed at least blue, it said there were no other pending cases involving this patent. Does that mean case? Yes, Your Honor. There's no other pending. This patent expired during the pendency of the litigation below, and after the stipulation was entered and the appeal taken, there's no other cases involving the 992 patent. Thank you. May it please the court. I want to address very briefly. Counsel stated a number of times that the figure 2 is related to describing prior art is not part of the invention. That's specifically inaccurate based on the 992 itself. The 992... Did she say that or figure 1? She said figure 2. Figure 2. The playback device is not part of the invention of the 992 patent. All right. In column 4, the statement, column 4, line 15, figure 2 illustrates the preferred system for displaying the content-addressable video according to the present invention. In the brief descriptions of the drawings, figure 1 describes... Of course, this specification is part of a chain, some of which continuations. So when it says disinvention, it's hardly conclusive of what's in these claims. Well, one way or the other, the 902 is not part of this chain, Your Honor. There's only one other patent part of this chain, the 514. And so the chain has, as its inventions, figure 1 and figure 2. The playback device is specifically set forth in this chain as an invention. And so... Now, one of the keys, because counsel again kept saying, well, the camera produces frames of video data. Again, we agree with that. Cameras produce video data. Video images are not data. And so, in fact, the claim... If we look at claim 3 of the 514, it just gives us a better context. It says each frame determining a video image. The whole idea is there's recorded data down there. The camera creates recorded data. That recorded data, just like our DVD disc, we put it into our DVD player, that data produces video image. That data defines the video image that we will see. It determines the video image. And so, again, in claim 2 of the 992, the controllable image generator produces video images, not data, video images. And that is produced in response to video image data. Now, you were referring to column 4, line 15, describing figure 2 as illustrating a system for displaying. Yes, Your Honor. At line 34, it states background concerning how to implement these interactive display systems can be found in the 902 passage. Yes, Your Honor. The 902 is not part of the priority chain. It is a cross-referenced patent. It was a patent that was owned by the same company at that time. But it is not part of this priority chain, Your Honor. The 902 is where we read earlier, when I was up first, about the specifics of how the control signals go to the video player, and the video player accesses the data, just like the video player would, and then displays the video images. So the 902 doesn't go back to the 1989 filing? No, the 902 actually was prior to that, Your Honor. I guess I see 4 million, right? Right. Yes, Your Honor. So the 902 is not part of this family. It is a separate group and family. It just happened to be owned by the same company. You agree, though, that the 514, to the extent that it refers to generating, was actually referring to the camera, correct? Certainly there is terminology in the 514 and the 992 that uses the term generating to refer to what the camera is doing when it is generating content-addressable video. The whole patent is about the content-addressable video. And so, yes, my point is that those words were not used in such a way that it can only be that. That is the point. Well, what are we to make of your terminal disclaimer based on the examiner's decision that there, in fact, was obviousness? Well, it was obviousness-type double patenting. So what they're saying is it wasn't statutory double patenting. It wasn't saying that everything in the claim- there was no addressing of what was the same or was not the same. And, in fact, the terminal disclaimer was filed for expediency. So there was no admission in the terminal disclaimer. It doesn't serve as any sort of admission of any kind. Well, it's a pretty important step. I mean, if you really believe that there were two different inventions, why wouldn't you have at least responded to the examiner by saying, no, that double patenting rejection is wrong? I can't speak to what happened. Again, there was expediency. There was no particular reason to do that. The applicant at the time was fine with having them co-terminate, I suppose. But that doesn't mean- again, it was obviousness-type double patenting. There were differences in those patents. Some of the terms were the same. Some of the terms were different. Expediency sounds like a word for a reason for getting the application allowed. It could be, yes, Your Honor. In other words, material. Well, but that doesn't mean that there is an admission or it is considered to be- it requires that all terms in the claim be defined exactly the same. Because it's not a statutory- it's not statutory. It's not anticipated. I was just going to ask, did you ever ask for a separate construction of video image data? We didn't. We raised that issue at the trial court. It became clear to the department that that might be a disputed term. And we suggested that might be prudent. But the way the court construed the rest of the claims, it all tied back to controllable image generators. So I think that's really- ultimately won't answer the question here. But I agree. You need to understand the context of video image data because it is the input to the controllable image generator. Thank you. The case will be taken under advisement. Thank you.